Ellen Vogel, Appellant, v West Mountain Corporation et al., Defendants, and Miller Brewing Company, Respondent. (And a Third-Party Action.)

Third Department, November 23, 1983

**APPEARANCES OF COUNSEL**

*William J. Schoonmaker* for appellant.

*Carter, Conboy, Bardwell, Case & Blackmore (Susanna L. Fisch* of counsel), for respondent.

**OPINION OF THE COURT**

Weiss, J.

In what appears to be a case of first impression in this State, we are called upon today to determine whether a sponsor of an athletic event, absent control, may be held liable in negligence for an injury to a participant. The underlying action is to recover for personal injury and property damage sustained in a skiing accident at West Mountain on January 8, 1980 during a slalom race advertised as the "Miller Ski Club Slalom". Joined as defendants with West Mountain, the ski slope operator, are Miller Brewing Company (hereinafter Miller) and J-Mar Beer Distributors, Inc. (hereinafter J-Mar), a Miller beer distributor.

The record demonstrates that West Mountain contacted J-Mar about sponsoring a slalom event by contributing racing bibs and banners bearing the "Miller High Life" logo. Pursuant to its distribution contract with Miller, J-Mar was encouraged to promote Miller beer through various athletic events including participation in ski races. After receiving West Mountain's proposal, employees of J-Mar inquired of Stephanie Mahler, Miller's area sales manager, whether it could earn promotional points by sponsoring the event. Mahler discouraged sponsorship, contending the event might involve minors, but acknowledged she was without authority to prohibit J-Mar from participating. Thereafter, J-Mar ordered the material requested by West Mountain as shown in a Miller marketing manual from the Austin Manufacturing Company, an independent concern. West Mountain promoted the event as the "First Annual Miller Ski Club Slalom" which was "A Race For Skiers of All Abilities * * * Sponsored by Miller Brewing Company."

Plaintiff, an experienced recreational skier, participated as a member of the Albany Singles Ski Club team and was injured during her second official run on the course when she lost control and struck the concrete base of a ski tower. In her complaint, plaintiff asserted Miller was negligent in failing to properly arrange the race course and in failing to warn of the dangers inherent in slalom ski racing. In its answer, Miller denied both sponsorship and that it played any part in the operation of the event. After depositions, Special Term granted a motion for summary judgment dismissing the complaint against Miller. Special Term assumed, *arguendo,* that sponsorship by Miller was established and concluded that sponsorship alone, absent "control over the design of the course, the supervision of the race, or the qualifications of entrants", was insufficient to impose liability for injuries sustained by a participant. This appeal by plaintiff ensued.

There should be an affirmance. While there may be serious questions involved in this case as to whether Miller, as it contends, was unaware of the subject event and whether J-Mar had authority from Miller to sponsor the event, we accept Special Term's conclusion that mere spon-

sorship, absent control, does not render Miller legally responsible. It is well established that before a defendant may be found liable for negligence, a duty must exist, the breach of which is the proximate cause of plaintiff's injury (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 342). The symmetry is clear: absent a duty, there is no breach and, without a breach, there is no liability. Whether a duty exists presents a question of law to be determined by the court based upon the facts and circumstances of the case. If such duty is found to exist, the question of breach is one of fact for the trier of fact to resolve unless reasonable minds could not differ as to the conclusions to be drawn from the evidence (Prosser, Torts [4th ed], § 37, pp 205-208). As a basic premise, the owner or occupier of land owes a duty to exercise "reasonable care under the circumstances" to prevent injury to persons on their property (*Akins v Glens Falls City School Dist.*, 53 NY2d 325, 329; *Basso v Miller*, 40 NY2d 233). The difficulty with this case is that Miller is not within either status but is, at best, a sponsor of an athletic event. Nonetheless, plaintiff urges that as a result of the fact that she was induced to enter the race on the basis of Miller's involvement, coupled with the financial benefits enjoyed by Miller as a sponsor, Miller owed a duty to ensure that the event was conducted in a safe manner.

In her affidavit in opposition to Miller's motion for summary judgment, plaintiff stated she first learned of the Miller-sponsored racing series when she read a flyer advertising the event and a letter sent to her club from the sales director of West Mountain, which described the series as open to all skiers regardless of ability. Plaintiff stated this information allayed her apprehension and induced her to enter the race. She further believed Miller would be in control of and supervise the race. Beyond the contention of inducement, plaintiff emphasizes Miller would benefit financially from the promotional aspect of the event. From these twin factors of inducement and financial benefit, plaintiff urges the imposition of a duty on the part of Miller to ensure the safety of the race.

To support her argument, plaintiff relies on a statement from the Court of Claims in *Saari v State of New York* (203 Misc 859, 866, affd 282 App Div 526) that "one who

conducts or sponsors" an auto race must exercise a high degree of care. *Saari,* however, involved the liability of the State in its supervision of the race; the active control of the sponsors was never disputed. Similarly, in *Watford by Johnston v Evening Star Newspaper Co.* (211 F2d 31), the defendant sponsor had organized the event, invited the public, arranged for police supervision and actively supervised the race. By comparison, in the New Jersey case of *Bango v Carteret Lions Club* (12 NJ Super 52), discussed by Special Term, the defendant sponsor of a local soap box derby was not held liable where there was no evidence that it controlled the race. The essential ingredient in each of these cases is that a duty was found to exist only where a defendant had sufficient control over the event to be in a position to prevent the negligence. Whether a similar duty arises where a sponsor is not actively engaged in controlling an event presents an altogether different matter.

As plaintiff readily acknowledges, her theory of negligence is a novel one and effectively entails the creation of a new legal obligation. While a court might impose a duty where none existed before, extreme care must always be exercised (*Pulka v Edelman,* 40 NY2d 781, 786; *DeAngelis v Lutheran Med. Center,* 84 AD2d 17, 22, affd 58 NY2d 1053; see *Moore v Shah,* 90 AD2d 389). An important criterion is whether the realities of everyday experience demonstrate that the party to be made responsible could have prevented the negligent conduct (*Pulka v Edelman, supra,* p 785). Here, neither Miller nor its agent J-Mar was in a position to supervise West Mountain's running of the race, since neither party enjoyed the necessary expertise and the operation of the slope was under heavy State regulation (Safety in Skiing Act [Labor Law, § 865 *et seq.*]; 12 NYCRR part 54). Moreover, the record demonstrates that West Mountain, not Miller, actually designed, supervised and controlled the event. In his deposition before trial, the president and general manager of West Mountain, Michael Brandt, stated there was no direct oral or written communication with Miller concerning the racing series, and that the design of the slope and supervision and control over the race was handled exclusively by West Mountain employees. Nowhere is this refuted in the record. Under these circumstances, it would be unreasonable

to impose a duty on Miller which, very simply, was not in a position to prevent the negligence. Despite plaintiff's subjective beliefs as to Miller's participation, it is further clear that Miller was never held out to be in control, but was merely advertised as a "sponsor" by West Mountain.

Plaintiff argues that Miller was negligent because of its failure to assume control over the event. The duty to control the conduct of others revolves around a special relationship between defendant, the person whose conduct he is required to control, and the person exposed to the harm (*Pulka v Edelman, supra,* pp 783-784). A realistic assessment of the relations between plaintiff, West Mountain and Miller does not give rise to any such special relationship, since there was no reasonable opportunity on the part of Miller to control the tort-feasor. Here, as stated, Miller was not capable of directing or controlling the racing series. Moreover, as a practical matter, to extend legal liability over a sponsor of an athletic event would prove an undue expansion of the sponsorship relationship, the net result of which would be to discourage further participation. While it cannot seriously be disputed that a sponsor benefits by the promotion of its product, financial gain does not of itself give rise to a legal obligation.

In sum, since Miller neither owned nor controlled the operation of the ski slope, and was not realistically in a position to assume such control, the existence of a duty has not been established (see *Ossmer v Bates,* 97 AD2d 871). It follows that summary judgment in Miller's favor was properly granted as a matter of law. The same result is compelled despite the fact that injury to plaintiff may have been foreseeable, since foreseeability alone is not sufficient to establish liability when, as here, there is no showing of any duty owed plaintiff (*Moore v Shah,* 90 AD2d 389, 390, *supra;* see *Lafferty v Manhasset Med. Center Hosp.,* 54 NY2d 277, 280).

The order and judgment should be affirmed, without costs.

MAHONEY, P. J., MAIN, CASEY and YESAWICH, JR., JJ., concur.

Order and judgment affirmed, without costs.