107 F.3d 3
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Margaret MAYER, individually and as Executrix of the Estate
of James E. Mayer, Deceased, Plaintiff-Appellant,
v.
CORNELL UNIVERSITY; Laura Brown, Defendants-Appellees.
 No. 96-7600.
 United States Court of Appeals, Second Circuit.
 Jan. 8, 1997.
 
 APPEARING FOR APPELLANT: Raymond M. Schlather, Lopinto, Schlather, Solomon & Salk, Ithaca, N.Y.
 APPEARING FOR APPELLEES: Thomas Mead Santoro, Cornell University, Ithaca, N.Y.
 Present: NEWMAN, Chief Judge. FEINBERG, McLAUGHLIN, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Northern District of New York and was argued by counsel.
 
 
 2
 Margaret Mayer, individually and as executrix of the estate of James E. Mayer, deceased, appeals from the April 16, 1996, order of the District Court, directing judgment for defendants Cornell University and Laura Brown after a two-week non-jury trial on appellant's wrongful death and survival claims. Appellant contends that the District Court erred by (1) finding that the defendants owed no duty to the plaintiff or the decedent, (2) reversing a prior ruling that plaintiff was entitled to a jury trial, (3) applying the Death on the High Seas Act to the wrongful death claim without finding a nexus to traditional maritime activity, and (4) determining that a contractual disclaimer of liability was effective.
 
 
 3
 In an unfortunate sequence of events, James E. Mayer ("Mayer") died while snorkeling during a birdwatching group tour in Costa Rica. Cornell's Laboratory of Ornithology sponsored the tour, which was led by Kenneth Rosenberg, and attended by Laura Brown, a research assistant and experienced ornithologist employed by and representing Cornell on the trip. Rosenberg was an employee of the tour operator, David Blanton, d/b/a Voyagers International ("Voyagers"). The snorkeling boat was owned and operated by the Marenco Biological Station ("Marenco"), a private nature reserve.
 
 
 4
 Mayer's death occurred a few miles off the Osa Peninsula while the tour was en route to Isla del Cano, an island to the southwest of mainland Costa Rica. Although Voyagers's original itinerary of the tour did not include the excursion to the Isla del Cano, it indicated that snorkeling might be possible during the trip, and encouraged participants to bring their own snorkeling equipment.
 
 
 5
 Both Cornell and Voyagers had promoted the tour in various brochures and magazines, each at times describing Brown as a tour assistant, a Cornell representative, or a tour leader. Only Rosenberg was consistently referred to by both parties as the tour leader. Aside from the initial promotion of the trip to Cornell's members, Voyagers was responsible for nearly every aspect of the trip, including preparing and disseminating detailed descriptions of the tour, planning the itinerary, arranging for airline tickets, and providing tour participants with brochures, travel tips and a departure checklist. Reservation forms and deposits for the trip were made out to Voyagers.[1]
 
 
 6
 As sponsor of the tour, Cornell was to receive a small percentage of the fees paid by each participant. It appears that Brown's function during the tour was to assist the group members to locate and identify different species of birds, and to help ensure the general comfort of the participants, such as those related to transportation, hotel accommodations, and eating arrangements. In return, she attended the trip free of charge to herself or Cornell, but she received no salary during the trip and had to use her own vacation time to attend.
 
 
 7
 One day during the trip, Rosenberg learned from a Marenco employee that there would be space available on a Marenco boat going to Isla del Cano. Passengers on the boat would have the opportunity for snorkeling while the boat was en route to the island. Rosenberg presented his group with the option of joining the del Cano day-trip. Although some participants simply wanted to enjoy the boat ride and not snorkel, all apparently agreed to take the trip.
 
 
 8
 The del Cano trip occurred the following day. A few members of the Cornell group, including Mayer, and some other Marenco guests and employees, chose to snorkel. Marenco staff operated the boat, assisted passengers to board the vessel, provided snorkeling equipment for those who did not have their own, and selected the location for the snorkeling. The only snorkeling instructions given to the passengers came from Marenco staff, and were limited to a description of the current, an indication of the general area within which to snorkel, instructions on how to re-board the boat after snorkeling, and the suggestion that snorkelers wear tee-shirts to avoid being stung by organisms in the water. No one instructed the snorkelers or those remaining on the boat on any other safety precautions.
 
 
 9
 Brown, who had some snorkeling experience, joined the snorkelers in the water, while Rosenberg remained on the boat using binoculars to look for wildlife. Neither Brown nor Rosenberg undertook to watch the snorkelers during the activity, nor to supplement the instructions given by the Marenco employee.
 
 
 10
 When Brown last saw Mayer alive he was swimming rapidly, but in no apparent distress, in the direction of the shore. Brown paid no particular attention to him, and resumed her own activity. After the other snorkelers had returned to the boat, they discovered that Mr. Mayer was missing. Sometime later, he was found floating near the shore. Despite efforts to revive him, Mayer did not regain consciousness. The cause of his death remains in dispute.
 
 
 11
 By order entered April 19, 1995, Chief Judge Thomas J. McAvoy originally ruled that the plaintiff's case would be tried before a jury.[2] However, more than seven months later, and after the case had been reassigned, Cornell and Brown moved for reconsideration of Judge McAvoy's ruling. When the case was officially reassigned to Judge McCurn on December 4, 1995, he heard oral argument on the defendants' motion, and then rejected the prior ruling. Mayer v. Cornell University, Inc., 909 F.Supp. 81 (N.D.N.Y.1991).
 
 
 12
 After a two-week bench trial on the wrongful death and survival claims, Judge McCurn directed the parties to submit post-trial briefs on the narrow issue of whether Cornell and Brown owed a duty to the decedent. Judge McCurn thereafter granted judgment to the defendants, finding, as a matter of law that neither of the defendants owed a duty to the plaintiff or the decedent.
 
 
 13
 1. Legal Duty.
 
 
 14
 A finding regarding the existence or nonexistence of a duty is a matter of law reviewed by this Court de novo. See, e.g., Andrews v. Metro North Commuter Railroad Co., 882 F.2d 705 (2d Cir.1989); Northern Tankers (Cyprus) Ltd. v. Backstrom, 934 F.Supp. 33, 39 (D.Conn.1996). Appellant presents three distinct theories for the argument that the District Court erred in finding that Cornell and Brown owed no duty to herself and decedent: (1) even if the defendants are characterized merely as sponsors of the trip, the extent of their control over the snorkeling imposes a legal duty owed to the members of the group; (2) the defendants voluntarily assumed a duty; and (3) the law of admiralty imposed a duty.
 
 
 15
 Generally, a sponsor is not liable in negligence for an injury caused to an event participant if the sponsor has no control over the event and thus is in no position to be able to prevent the injuries. See Johnson v. Cherry Grove Island Mgmt., Inc., 573 N.Y.S.2d 187, 188 (App.Div.1991) (citing Vogel v. West Mountain Corp., 470 N.Y.S.2d 475 (App.Div.1983)). Nor is a sponsor liable for the negligent acts of third parties controlling the event unless the sponsor has the authority to control the actions of those third parties. Gibbons v. Oswego County, 556 N.Y.S.2d 428, 429 (App.Div.1990) (citation omitted).
 
 
 16
 In this case, the evidence amply demonstrated that neither Cornell nor Brown was in a position to ensure the safety of the snorkeling activity because neither had any particular expertise in snorkeling, see Vogel, 470 N.Y.S.2d at 477, and, more significantly, neither had any authority over the actions of Marenco or its employees, Gibbons, 566 N.Y.S.2d at 429. Indeed, there was no realistic opportunity for Brown, or Cornell in particular, to control the circumstances of the snorkeling because in planning its sponsorship of the tour, Cornell could not have anticipated Marenco's unexpected offer for the group to join the del Cano day-trip. Though appellant contends that Brown, who was listed in some literature as a leader along with Rosenberg, had a duty either to inquire into Marenco's competence or notify the tour members that such inquiry had not been made, the undisputed evidence established that any such duty of inquiry or notification fell only to Rosenberg. Brown's responsibilities concerned ornithology and assuring that the tour members were satisfied with their travel accommodations.
 
 
 17
 We see no reason for extending New York law to impose a duty of care on the basis of what appellant characterizes as the "special relationship" between a sponsor and the third party controlling an event, or between a sponsor and the event participants. See Kazanoff v. United States, 945 F.2d 32, 36 (2d Cir.1991) (quoting Purdy v. Public Administrator of Westchester County, 530 N.Y.S.2d 513, 516 (1988)).
 
 
 18
 A finding that the defendants voluntarily assumed a duty depends on whether their conduct placed the decedent in a more vulnerable position than he would have been in had the defendants done nothing. See, e.g., Heard v. City of New York, 603 N.Y.S.2d 414, 417 (1993). A plaintiff (or a plaintiff's decedent) is placed in a worse position if, for instance, the defendant's conduct either created or enhanced the risk to the plaintiff, or induced the plaintiff to forgo an opportunity to avoid risk. Id.
 
 
 19
 Such was not the case here. There was no evidence that Brown did anything other than join the other snorkelers in the water for her own enjoyment. At no time did she lead any person in the group to believe that she was assuming a supervisory function over the snorkeling activity or over the Marenco staff. Nor did Cornell, in its promotion of the tour, imply that it would ensure the safety tour participants who should choose to snorkel, particularly since the snorkeling excursion was an unexpected change of itinerary over which Cornell had no control. There was no assumed duty on the part of these defendants.
 
 
 20
 Finally, there is no basis for finding that these defendants owed a distinct duty under admiralty law. Even if, as plaintiff contends, industry practice and custom in regard to snorkeling impose a duty to use specific precautions such as pairing strong swimmers with weak swimmers during the activity, plaintiff offers no support for the argument that such a duty should apply to Cornell or Brown, rather than just to Marenco or perhaps to Voyagers.
 
 2. The Motion for Reconsideration
 
 21
 Even if we assume that we may review Judge McCurn's grant of the motion to reconsider Chief Judge McAvoy's ruling, but see Shrader v. CSX Transportation, Inc., 70 F.3d 255, 256 n. 1 (2d Cir.1995), there was no abuse of discretion in rejecting the prior ruling because it was in error. Since jury trials are not available in admiralty actions, the narrow question revisited by Judge McCurn was whether the survival claim arose under state law or admiralty law. Judge McCurn determined that the only survival action the plaintiff could assert would be one arising under admiralty law. 909 F.Supp. at 84-85. This conclusion is supported by this Court's broad language in Preston v. Frantz, 11 F.3d 357 (2d Cir.1993) stating that "the development of a general maritime law survival action necessarily precludes the application of state survival statutes." Id. at 358. It was not an abuse of discretion for Judge McCurn to determine that there was clear error in Judge McAvoy's prior ruling that state law could apply to the survival claim.[3]
 
 3. Death on the High Seas Act
 
 22
 Appellant argues that it was error for the District Court to rule that her wrongful death claim was governed by the Death on the High Seas Act, 46 U.S.C. § 761 et seq. ("DOHSA"). Although she concedes that the circumstances of Mayer's death clearly fall within the literal language of DOHSA, she nevertheless urges that DOHSA should apply only if the alleged wrong bears a significant relationship to traditional maritime activity. See Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249 (1972). In Executive Jet, the Supreme Court emphasized that the nexus requirement is a predicate for admiralty jurisdiction in cases where there is no controlling statute to the contrary. Id. at 268, 271. DOHSA is specifically mentioned to illustrate such a statute. Id. at 271 n. 20, 274 n. 26. Thus, Chief Judge McAvoy may well have been correct to rule that DOHSA governed the wrongful death claim. But even if DOHSA claims require a nexus to traditional maritime activity, appellant's claim meets the nexus requirement. The accident occurred in navigable waters in the course of activities connected with a maritime commercial undertaking, ocean touring of passengers.
 
 4. Joint Venture
 
 23
 Whether the existence of a joint venture is evaluated under New York law or federal law, the facts of this case do not support a finding that the tour was a joint venture undertaking between Voyagers and Cornell. The defendants did not intend to create a joint venture, and it is evident that they intended that Cornell would merely sponsor, and not control, the tour. See, e.g., Sasportes v. M/V Sol de Copacabana, 581 F.2d 1204, 1208 (5th Cir.1978); McGrath v. United Hospital, 562 N.Y.S.2d 193, 194 (App.Div.1990) (citing Mendelsohn v. Feinman, 531 N.Y.S.2d 326 (App.Div.1988)).
 
 5. Disclaimer
 
 24
 Because we conclude that the defendants owed no duty to the appellant or the decedent, we need not rule on the effect of the contractual disclaimer.
 
 
 
 [1]
 On the back of the reservation form, Voyagers disclaimed any responsibility or liability in connection with the service of any vessels used during the trip, and extended coverage of the disclaimer to Rosenberg and to Cornell and its agents
 
 
 [2]
 The case originally involved numerous claims and numerous defendants. After many of the defendants reached settlements with the plaintiff, only Brown and Cornell remained in the action. The subsequent dismissal of some of the claims against these two defendants left only two claims for trial
 
 
 [3]
 No contrary conclusion is compelled by the Supreme Court's recent opinion in Yamaha Motor Corp. U.S.A. v. Calhoun, 116 S.Ct. 619 (1996). The Court there ruled only that state law may supplement the measure of damages for wrongful death even though maritime law otherwise provides the wrongful death cause of action. Because the Court explicitly left open the question of whether substantive state law liability rules would also apply, id. at 628 n. 14, it necessarily left undecided the more specific issue of whether the jury trial entitlement accompanying a state law claim would similarly apply