# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
July 19, 2011 Session

## GINNY BETH KING, ET AL. v. FLOWMASTER, INC.

**Direct Appeal from the Circuit Court for McNairy County**
**No. 6040      J. Weber McCraw, Judge**

---

**No. W2010-00526-COA-R3-CV - Filed September 27, 2011**

---

Flowmaster invited a professional driver to attend an exhibition in which such driver allegedly lost control of his vehicle, killing or injuring many spectators. The plaintiffs sued numerous defendants, including Flowmaster, and the trial court granted Flowmaster's motion for summary judgment. We affirm the trial court's finding that Flowmaster was not a member of a joint venture. However, we find that Flowmaster failed to negate the duty element of the plaintiffs' negligence claim, and that genuine issues of material fact exist as to whether Flowmaster "engaged in" an ultrahazardous activity or "participated" in a "drag race," and we remand on these issues.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Lewis L. Cobb, Jackson, Tennessee, for the appellants, Ginny Beth King, Steve R. Taylor, Brenda Taylor and Bruce Replogle

Stephen L. Hale, Bolivar, Tennessee, for the appellants, Sheila Sisk and Jeff Sisk and Amy J. Driskill, Individually and as surviving spouse of Sean Driskill

Douglas J. Fees, Huntsville, Alabama; Johnnie L. Franks, Florence, Alabama, for the appellants, Linda Harmon and Rouge-Jett Cloud

C. Mark Donahoe, Jackson, Tennessee, for the appellants, Codye Tomaszewski, Roger Pitchford, Mark and Rowena Pope, Individually and as parents of Brooke Lauren Pope, deceased, and Ronald Griswell, Individually and as parents of Raven Leann Griswell,

deceased, and Nichole Charm Griswell, deceased

R. Christopher Gilreath, Memphis, Tennessee, for the appellants, Andrew James Bishop, Jeannie Dawn Townsend, Anthony Weirich and Vicky Weirich, Cynthia G. Stephens, Shane A. Smith, Christopher L. Mettlen, Michael L. Smith and Teresa A. Smith, and Selina H. Kennedy

William B. Jakes, III, Hugh C. Gracey, III, Nashville, Tennessee, for the appellee, Flowmaster, Inc.

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

On June 16, 2007, during a charity "Cars for Kids" exhibition in Selmer, Troy Critchley, a professional driver, while attempting to perform a "burnout," allegedly lost control of his vehicle and crashed into a crowd of spectators killing six people and injuring many others.  The numerous plaintiffs filed suit[1] against multiple defendants, including Flowmaster, Inc. ("Flowmaster"), based upon the theories, among others, of joint venture, negligence, and ultrahazardous activity.  Flowmaster moved for summary judgment with regard to all theories, which the trial court granted, finding that "(1) Flowmaster, Inc. had no control over the event, vehicle, driver, or driving team which allegedly caused the deaths and injuries which are the subjects of this litigation, and (2) Flowmaster, Inc. owed no duty to the plaintiffs in this litigation."[2]  All plaintiffs timely appealed.

### II.  ISSUE PRESENTED

On appeal, Appellants argue that the trial court erred in granting Flowmaster's motion for summary judgment, as Flowmaster was involved in a joint venture with Larry Price, Cars for Kids, and Troy Critchley; Flowmaster owed a duty of care to the plaintiffs; Flowmaster engaged in an ultrahazardous activity; and Flowmaster participated in a drag race.[3]  For the following reasons, we affirm in part and reverse in part, and we remand for further proceedings.

---

[1]The twenty-three separately filed suits were consolidated for discovery purposes.

[2]The trial court's order was made final pursuant to Tennessee Rule of Civil Procedure 54.

[3]The numerous plaintiffs in this case joined the brief filed on behalf of plaintiffs Codye Tomaszewski, et al.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green v. Green**, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)).

"A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 9 (Tenn. 2008) (footnote omitted). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." **Id.** at 8. If the moving party makes a properly supported motion, the burden of production shifts to the nonmoving party to establish the existence of a genuine issue of material fact. **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993)

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. **Martin,** 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." **Id.** (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV. DISCUSSION
### *A. Joint Venture*

On appeal, the plaintiffs argue that a genuine issue of material fact exists as to whether Flowmaster was involved in a joint venture with driver Critchley, Cars for Kids, and Cars for Kids founder Larry Price, such that any member's negligence could be imputed to Flowmaster.

"The elements that need to be shown to establish a joint venture among several parties are a common purpose, some manner of agreement among them, and an equal right on the

part of each to control the venture as a whole and any relevant instrumentality." ***Cecil v. Hardin***, 575 S.W.2d 268, 271 (Tenn. 1978), *superseded by statute on other grounds,* (citing *Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514 (Tenn. 1958); *Evans v. Allstate Ins. Co.*, 194 So. 2d 762 (La. App. 1967); *Manley v. Horton*, 414 S.W.2d 254 (Mo. 1967)). In *Fain v. O'Connell*, 909 S.W.2d 790, 793 (Tenn. 1995), our Supreme Court quoted with approval the following definition of a joint venture:

> "A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."

(quoting 30 Am. Jur., p. 939).

The plaintiffs contend that Flowmaster, driver Critchley and Mr. Price shared a common purpose to promote Cars for Kids and that an agreement existed between them whereby Flowmaster recruited drivers for the event, driver Critchley performed a burnout, and Mr. Price "directed the activities of the Cars for Kids event." Regarding the element of control, the plaintiffs apparently maintain that Flowmaster was a co-organizer of the charity event, contending that Mr. Price "only loosely organized the Cars for Kids event and [he] relied on many others to organize pieces of the event[.]"

In his deposition testimony, Flowmaster's Senior Vice President of Marketing, Richard Small, described his as well as Flowmaster's relationship with the Cars for Kids event. Mr. Small met Cars for Kids founder Larry Price in 1991, and he began cooking barbeque at the event, on his personal time, to raise money for the charity. During the first two years that the Cars for Kids event was held, in the early 1990s, Flowmaster donated five pairs of mufflers. Additionally, prior to 2007, Flowmaster provided promotional materials such as decals and keychains, and it sent employees to attend the event. However, he explained that "as the event got bigger, we got bigger, we were able to donate money instead of product and we started donating small amounts of money and over the years it increased

-4-

and that was our involvement." In fact, in 2001, Flowmaster donated $20,000 and from 2002 to 2006 it donated $25,000 per year to the event. At some time prior to 2007, Flowmaster President Ray Flugger served as grand marshal of the Cars for Kids parade.

At his deposition, Mr. Small acknowledged inviting driver Critchley to the 2007 event. He described the invitation as follows:

> I just ma[d]e a casual phone call and said do you happen to have Father's Day weekend open? I don't know, I will have to check. And I sa[id], well, if you do, it would be neat if you guys could come down, you know, for the purpose of Cars for Kids. That was the request.
>
> . . . .
>
> I just stated that way I said it, and his - - and I did - - I'm sure [I] told him, you know, nobody can pay anything. It's strictly on their own, and he said I will have to check with his team owner Dave and so I said fine. And I don't recall whether - - I probably called him back and said, you know, any luck? Or is it something that you can do? And he said, yeah, fine, if you want to do it. So I sa[id] okay.

> At that point I just simply said you need to talk to Larry Price because, you know, it's his thing and he will tell you where to go, what to do, how to get there, and he said what's involved? And I said, well, you have a static display. You set up. They have a thing on Saturday night. It is kind of unique. They do burnouts, short ones, go up main street. That's it. It called a Saturday night parade. I said if that's something that you don't prefer to do, that's fine, too. Some people will take a race car and just literally tow it down just to show. But the main purpose was, of course, to have him there statically to draw more people and get close to a real race car. But that is basically what it was, and at that point he had to call, you know Larry [Price] to get all the particulars.

When asked if he requested that driver Critchley perform a burnout, Mr. Small answered that he informed driver Critchley that the burnout was optional and that "that choice was left to [driver Critchley.]" Additionally, he stated that "I made it pretty clear when I requested that this was a charity. This was optional. You know, it would be nice if you could come, and if you can't, I understand that, too."

-5-

In his affidavit, Mr. Small stated that "Flowmaster did not plan, sponsor, direct or otherwise participate in the Cars for Kids charity event in 2007." Furthermore, he swore that "[n]o representatives, including staff or employees, of Flowmaster were present at the Cars for Kids charity in 2007[,]" that "Flowmaster did not contribute any money or products to the Cars for Kids charity event in 2007[,]" and although he had "extended an invitation" to driver Critchley in 2007, driver Critchley "was not an employee, agent, or servant of Flowmaster and had no relationship, employment or otherwise, with Flowmaster."

At his deposition, driver Critchley testified that he accepted Flowmaster's "request" to attend the event and perform a burnout based upon Flowmaster's sponsorship of AMS Racing ("AMS"), which apparently sponsored driver Critchley's race team. However, he acknowledged that Flowmaster had no ownership interest in, or contractual relationship with, AMS, that he had never been a Flowmaster employee or agent, that he had never received any monetary compensation from Flowmaster, and that he was free to decline Mr. Small's invitation to attend the 2007 event. Furthermore, he conceded that he decided which car, tires and equipment to take the event. He stated that to his knowledge Flowmaster played no part in planning the 2007 Cars for Kids event, that neither Mr. Small nor Mr. Price had represented Flowmaster as a 2007 event sponsor, and that he did not see or speak to any Flowmaster representatives at the 2007 event. Finally, he agreed that "Flowmaster's only involvement with [the 2007] Cars for Kids event was when [he] [twice] spoke with Richard Small and he asked if [he] and [his] team would go[.]"

Cars for Kids founder Larry Price testified by deposition regarding the event's loose organization. He explained that "a group of people" planned the Cars for Kids event, and that they all "talk[ed] every day" via telephone. He stated, "Usually it is the same thing every year. You have entertainers on Friday. You've got lawn-and-garden tractors pulling in. Everybody is coming in on a Thursday, Friday. You don't see [any]body - - you don't tell [any]body what to do. Everybody knows what to do." However, he unequivocally stated that Flowmaster played no part in planning the 2007 event, that it had no input regarding the burnout location, and that it had no representative present at the event. Additionally, Mr. Price explained that Flowmaster was erroneously listed on a t-shirt and in a flyer as an event sponsor, as Flowmaster made no monetary or product donations in 2007, and as it did not authorize its inclusion in such.

As we stated above, to establish a joint venture, a common purpose, an agreement, and an equal right to control the venture and instrumentality must be shown. *Cecil*, 575 S.W.2d at 271 (citations omitted). Although the plaintiffs have demonstrated Flowmaster's substantial involvement with Cars for Kids *prior to* 2007, the record establishes that

Flowmaster's involvement in the 2007 event did not extend beyond merely inviting driver Critchley to attend, and perhaps perform a burnout. The undisputed evidence demonstrates that Flowmaster did not plan, sponsor, or attend the event, and it did not employ driver Critchley, compensate him, or select the vehicle he drove. As such, we find that Flowmaster has affirmatively negated an essential element of the plaintiffs' joint venture claim–that it shared an equal right to control the venture and instrumentality. *Id.* Because the plaintiffs have failed to establish the existence of a genuine issue of material fact, **Byrd**, 847 S.W.2d at 215, the trial court's grant of summary judgment, with regard to the joint venture claim, is affirmed.

### B. Duty

Next, the plaintiffs argue that the trial court erred in finding that Flowmaster owed no duty of care to them that would support a claim of negligence. Whether a defendant owes a duty of care to a plaintiff is a question of law. **Giggers v. Memphis Housing Authority**, 277 S.W.3d 359, 365 (Tenn. 2009) (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994); *Glenn v. Conner*, 533 S.W.2d 297, 302 (Tenn. 1976)).

The elements of a negligence claim are as follows: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). "Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." **Staples**, 15 S.W.3d at 89 (citing *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996)).

In determining whether a duty is owed, a court must first establish that a risk of harm is foreseeable. **Giggers**, 277 S.W.3d at 365. "[A] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party whom is owed a duty is probable." **Doe v. Linder Constr. Co., Inc.**, 845 S.W.2d 173, 178 (Tenn. 1992). "'[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'" **Id.** (quoting *Tedder v. Raskin*, 728 S.W.2d 343, 348 (Tenn. Ct. App. 1987)). Once

foreseeability is established, a balancing test must then be applied to determine whether the risk of harm was unreasonable. *Giggers*, 277 S.W.3d at 365 (citing *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008). "That is, in consideration of, among other things, the presence or absence of prior similar incidents, and other circumstances, does the foreseeability of the harm outweigh the burden of the duty imposed?" *Id.* (citing *McClung*, 937 S.W.2d at 901).

First, the plaintiffs argue that the accident was foreseeable. As support for this contention, they point to Richard Small's deposition testimony in which he stated that he had witnessed a burnout performed on a public road at a previous Cars for Kids event. They claim that "Mr. Small and Flowmaster were aware of the nature of burnouts, how they worked, and the danger that such burnouts imposed." However, they provide no citation for this statement, and after a thorough review of the lengthy record, we find no acknowledgment by Mr. Small of the "danger . . . imposed." Essentially, they assert that Mr. Small's previous Cars for Kids attendance, coupled with his knowledge of burnouts, made it foreseeable "that by encouraging a driver . . . to attend the event and perform a burnout on a street lined with spectators with no barriers, the driver could lose control of such a high-powered vehicle and crash into the crowd, killing and injuring the spectators."

Next, the plaintiffs contend that Flowmaster could have easily prevented the accident by requesting that barriers be erected along the roadway, and due to the gravity of harm, its failure to make such a simple request created an unreasonable risk of harm. The plaintiffs cite Mr. Price's deposition testimony that barricades "would have cost nothing[,]" as they "would have got them off the county, these highway barriers that go on the road construction."

Flowmaster, however, primarily argues that the plaintiffs cannot establish foreseeability because Flowmaster had no control over the event, driver Critchley, or his vehicle. *See Doe*, 845 S.W.2d at 178 ("'[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, *and that some action within the [defendant's] power more probably than not would have prevented the injury*.'" (emphasis added) (quoting *Tedder*, 728 S.W.2d at 348)). As support for this argument, Flowmaster cites the New York case of *Vogel v. West Mountain Corp.*, 97 A.D.2d 46, 47 (N.Y. 1983), in which the court found that an event sponsor, who lacked sufficient control over the event to prevent negligence, could not be liable for such.

Alternatively, Flowmaster contends that the trial court correctly found that Flowmaster

owed no duty to the plaintiffs, as the plaintiffs "failed to produce anything in discovery that established that the foreseeability of the accident was a *probability*[,]" and the plaintiffs failed to "point the court to: 1) any proof that Flowmaster was aware of burnouts in previous years at the Cars for Kids event, or 2) any proof that Flowmaster had knowledge of any other event where a burnout had caused accidents and/or injuries."

As we pointed out in the joint venture analysis, the undisputed evidence establishes that Flowmaster's involvement in the 2007 event did not extend beyond inviting driver Critchley to attend, and perhaps, requesting that he perform a burnout. Again, Flowmaster did not plan, sponsor, or attend the event, nor did it employ driver Critchley, compensate him, or make his vehicle selection. However, it does not necessarily follow from our conclusion that Flowmaster lacked *equal* control to sustain a joint venture, that there was *no* action within Flowmaster's power that would have prevented the injury. Thus, we reject Flowmaster's assertion that its limited involvement precludes the finding of a duty on its part.

Moreover, we reject Flowmaster's assertion that the plaintiffs' negligence claim should dismissed based on the plaintiffs' alleged failure to "produce anything in discovery that established that the foreseeability of the accident was a *probability*" or to prove that Flomaster "had knowledge of any other event where a burnout had caused accidents and/or injuries[.]" As stated above, at the summary judgment stage, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." **Hannan**, 270 S.W.3d at 8. Because we find that Flowmaster has not affirmatively negated the "duty" element of the plaintiffs' negligence claim, we reverse the trial court's grant of summary judgment with regard to this issue.

### C. *Ultrahazardous Activity*

In their complaints, the plaintiffs alleged that Flowmaster should be held strictly liable for participating in an "ultrahazardous activity." The trial court apparently granted summary judgment to Flowmaster with regard to this issue,[4] and the plaintiffs allege that this was error.

---

[4]In its brief, Flowmaster states that "[t]he trial court held that Flowmaster affirmatively established that it was not 'engaged' or 'participated' in any ultrahazardous event in 2007 [sic]." The trial court's order granting summary judgment does not specifically address these issues; however, it does expressly dismiss all claims against Flowmaster.

"In Tennessee, defendants *engaged in* ultrahazardous activities are held strictly liable for injuries caused to the person or property of another by defendant's participation in the activity." **Leatherwood v. Wadley**, 121 S.W.3d 682, 699 (Tenn. Ct. App. 2003) (emphasis added) (citing *England v. Burns Stone Co., Inc.*, 874 S.W.2d 32, 37 (Tenn. Ct. App. 1993)). "The negligence or care exercised by the defendant in carrying out said activity is irrelevant." **Id.** (citing *Miller v. Alman Constr. Co.*, 666 S.W.2d 466, 468 (Tenn. Ct. App. 1983)).

Like the issues addressed above, Flowmaster argues that its alleged lack of control is dispositive of the ultrahazardous activity issue. It claims that its "undisputed . . . complete lack of participation in the 2007 event" forecloses a finding that it "engaged in" an ultrahazardous activity.

Again, Flowmaster invited driver Critchley to the event, and a question of fact exists as to whether it requested that he perform a burnout. Flowmaster has cited no definition which affirmatively excludes its actions from "engaging in" an ultrahazardous activity. Thus, we find that the trial court erred in granting summary judgment with regard to this issue.

### D. Drag Racing

The plaintiffs also allege that Flowmaster was negligent per se[5] for participating in a "drag race." Tennessee Code Annotated section 55-10-501(1) defines "drag racing" as

(A) The use of any motor vehicle for the purpose of ascertaining the maximum speed obtainable by the vehicle;

(B) The use of any motor vehicle for the purpose of ascertaining the highest obtainable speed of the vehicle within a certain distance or within a certain time limit;

(C) The use of any one (1) or more motor vehicles for the purpose of comparing the relative speeds of the vehicle or vehicles, or for comparing the relative speeds of the vehicle or vehicles within a certain distance or within a

---

[5]"It is well settled that a failure to perform a statutory duty is negligence per se, and, if the injury is the proximate result or consequence of the negligent act, there is liability." **Wise & Co. v. Morgan**, 48 S.W. 971, 972 (Tenn. 1898).

certain time limit;

(D) The use of one (1) or more motor vehicles in an attempt to outgain, outdistance or to arrive at a given destination simultaneous with or prior to that of any other motor vehicle; or

(E) The use of any motor vehicle for the purpose of the accepting of, or the carrying out of any challenge, made orally, in writing, or otherwise, made or received with reference to the performance abilities of one (1) or more motor vehicles[.]

It further defines a drag racing "participant" as

that person or persons who operate any motor vehicle or motor vehicles upon the public highways of this state, or that of any municipality or political subdivision thereof, for the purpose of "drag racing", *and also any person or persons who arrange for, supervise, or in any way and manner set in motion any "drag racing", regardless of whether or not such person or persons may be the operator of, or be a passenger in, any motor vehicle participating in "drag racing*[.]*"*

Tenn. Code Ann. § 55-10-501(2) (emphasis added).

As support for their argument that driver Critchley's "burnout" constituted "drag racing," the plaintiffs cite the affidavit testimony of a safety engineering specialist who described the burnout as "Mr. Critchley revving his powerful drag-racing engine and spinning the racing wheels . . . to create a large quantity of smoke and noise before *speeding down the public right of way*[.]" (emphasis added). However, Flowmaster contends that the plaintiffs "have failed to point the court to _any_ proof that would support the contention that Critchley was 'drag racing' at the time as defined under T.C.A. § 55-10-501(1)(E)." Because he was not "drag racing," Flowmaster claims, the drag racing "participant" definition is inapplicable.

We find that a genuine issue of material fact exists as to whether the "burnout" performed falls within the "drag racing" definition. Additionally, we find a genuine issue of material fact exists as to whether Flowmaster instructed driver Critchley to perform a burnout, and if so, whether this equates to "participation" as openly-defined by Tennessee Code Annotated 55-10-501(2). Accordingly, we reverse the trial court's grant of summary

-11-

judgment with regard to whether Flowmaster participated in a drag race in violation of Tennessee Code Annotated section 55-10-501, et seq.

## V. CONCLUSION

For the aforementioned reasons, we affirm in part and reverse in part, and we remand for further proceedings. Costs of this appeal are taxed equally to Appellee, Flowmaster Inc., and Appellants, Ginny Beth King, et al., and their sureties, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.