13-1836-cv
Roberts v. Los Alamos National Security, LLC, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 22nd day of July, two thousand fourteen.

Present:     DENNIS JACOBS,
             ROSEMARY S. POOLER,
                     *Circuit Judges*.
             NELSON S. ROMÁN,[*]
                     *District Judge*.

_____

SAMUEL M. ROBERTS,

                    *Plaintiff–Appellant*,

             -v-                                              13-1836-cv

UNIVERSITY OF ROCHESTER,

                    *Third-Party Defendant–Counter-Claimant–Appellee*,

LOS ALAMOS NATIONAL SECURITY, LLC, AWE, PLC, MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

                    *Defendants–Cross-Claimants–Third-Party Plaintiffs–Cross-
                    Defendants–Counter-Defendants–Appellees*.[**]

_____

[*] The Honorable Nelson S. Román, United States District Court for the Southern District of New York, sitting by designation.

[**] The Clerk of Court is directed to amend the caption as above.

Appearing for Appellant:      Louis J. Micca, Pittsford, N.Y.

Appearing for Appellees:      Eric J. Ward, Ward Greenberg Heller & Reidy LLP, Rochester, N.Y., *for* University of Rochester.

                                     Beryl Nusbaum, Woods Oviatt Gilman LLP (Greta K. Kolcon, *on the brief*), Rochester, N.Y., *for* Los Alamos National Security, LLC.

                                     Philip T. Evans, Holland & Knight LLP, Washington, D.C. (Christine Tramontano, New York, N.Y. and John F. Stanton, Washington, D.C., *on the brief*), *for* AWE, plc.

                                     David Rothenberg, Geiger and Rothenberg, LLP, Rochester, N.Y., *for* Massachusetts Institute of Technology.

Appeal from the United States District Court for the Western District of New York (Larimer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED IN PART, VACATED IN PART**, and this case is **REMANDED** for further proceedings consistent with this order.

Plaintiff–Appellant Samuel M. Roberts appeals from the April 26, 2013 Decision and Order of the United States District Court for the Western District of New York (Larimer, *J.*), in which the court, among other things: (1) granted the motions for summary judgment filed by Defendants–Appellees Los Alamos National Security, LLC ("Los Alamos"); AWE, plc ("AWE"); and Massachusetts Institute of Technology ("MIT"); (2) granted the motion for summary judgment filed by Third-Party Defendant–Appellee University of Rochester (the "University"); (3) denied Roberts's partial motion for summary judgment against Los Alamos; and (4) denied Roberts's motion for discovery-related sanctions against Los Alamos. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

### I. The Grant of Summary Judgment

"We review the district court's grant of summary judgment *de novo*, applying the same standards that govern the district court's consideration of the motion." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013) (internal quotation marks omitted).[1] Rule 56 of the Federal

---

[1] As this is not a case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, any difference in the retaliation standard set forth in *Summa*, 708 F.3d at 125, and the Supreme Court's more recent articulation of that standard in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013), is not relevant here.

Rules of Civil Procedure governs a district court's consideration of a motion for summary judgment and provides, in pertinent part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On a motion for summary judgment, "[w]e resolve all ambiguities and draw all reasonable inferences in the light most favorable to the nonmoving party." *Summa*, 708 F.3d at 123.

Under New York's law of negligence, the existence of a duty of care "usually" is a legal question, the answer to which is not derived from an "algebraic formula," but rather "from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994). We determine whether a duty exists "by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Gilson v. Metro. Opera*, 5 N.Y.3d 574, 576–77 (2005) (internal quotation marks omitted).

In this case, the district court erred in granting summary judgment to Los Alamos because there are genuine disputes of material fact that prevent us from deciding at this stage of the litigation whether, as a matter of law, Los Alamos owed Roberts a duty of care. More specifically, there are genuine disputes concerning whether Dr. Hans Herrmann, the Los Alamos employee who was the lead principal investigator on the August 6, 2008 experiment during which Roberts was gravely injured, had obligations with respect to the qualification of the light pipe diagnostic. Those disputes are material because they affect the legal determination concerning whether Los Alamos owed a duty to Roberts.

Roberts has pointed to sufficient evidence to allow a reasonable factfinder to conclude that the light pipe was not qualified before the date on which he was injured. When a principal investigator such as Dr. Herrmann wishes to perform an experiment at the University's Laboratory for Laser Energetics (the "LLE"), that principal investigator is subject to a set of procedures that are set forth in the Laser Facility Organization & Regulation Manual (the "LFORM"). Principal investigators are to list in their experiment proposals any diagnostics that have not been qualified. According to the LFORM, a non-qualified diagnostic is defined, in part, as a diagnostic that has "not completed facility qualification per LLE Instruction 7700." Joint App'x at 86. Although a director at the LLE attested to the fact that the light pipe was qualified in 2006, which was prior to Roberts's injury, the Preliminary LLE Incident Report states that Roberts's injury was caused, in part, "by the failure to rigorously follow the procedures of LLEINST 7700." *Id.* at 332. The evidence, properly viewed in the light most favorable to Roberts, would allow a reasonable factfinder to conclude that the light pipe was not qualified. Because there is a genuine dispute concerning whether the light pipe was qualified, there is also a genuine dispute as to whether Dr. Herrmann was required to list the light pipe on his experiment proposal as a non-qualified diagnostic.

3

Roberts has also established a genuine dispute with respect to Dr. Herrmann's obligations regarding the qualification of the light pipe. The LFORM states in the section concerning the responsibilities of principal investigators that "[a]ll new diagnostics must be fully qualified by Wednesday, two weeks before the date of the experiment." *Id.* at 90. In addition, principal investigators must complete an orientation that includes "[b]riefing on diagnostic qualification procedures." *Id.* at 85. According to a director of the LLE, Dr. Herrmann, as the principal investigator on the August 6, 2008 experiment, had no responsibility for qualifying the light pipe, but rather it was the responsibility of Dr. Vladimir Glebov, the principal investigator for the light pipe itself, who "was responsible for qualifying the light pipe per LLE Instruction 7700." *Id.* at 620. However, the LFORM does not expressly state what principal investigator is responsible for the qualification of a diagnostic two weeks before it is to be used in an experiment. In addition, the LFORM does not express whether a principal investigator on an experiment, such as Dr. Herrmann, has a responsibility to ensure that a diagnostic is qualified, even if he is not responsible for qualifying it himself. Properly resolving all ambiguities and drawing all reasonable inferences in favor of Roberts, a reasonable factfinder could conclude that the LFORM imposed a duty on Dr. Herrmann to ensure that the light pipe was qualified prior to the experiment in which Roberts was injured, even if Dr. Herrmann was not personally responsible for qualifying the light pipe.[2]

Those genuinely disputed facts are material because they "might affect the outcome of the suit under the governing law," *Anderson*, 477 U.S. at 248. The LFORM, a document containing procedures with which principal investigators must comply, is akin to a contract between those investigators and the University, notwithstanding Roberts's indication to the contrary. And a contract, under certain circumstances, can establish a duty of care owed by a contracting party to a third party. *See Palka*, 83 N.Y.2d at 586. One of those circumstances is "where the contracting party has entirely displaced the other party's duty to maintain [a] premises safely." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 140 (2002). The aforementioned genuine disputes of fact concerning Dr. Herrmann's responsibilities with respect to the disclosure of the light pipe as a non-qualified diagnostic and his obligation to ensure that the diagnostic was qualified are disputes that affect a determination of the scope of Los Alamos's duty under the LFORM to ensure that its experiment was safe.

Even if the LFORM were not sufficiently analogous to a contract, a court can "impose a duty where none existed before," so long as it exercises "extreme care." *Vogel v. W. Mountain Corp.*, 470 N.Y.S.2d 475, 477 (3d Dep't 1983). If a new duty of care were to be imposed, "[a]n important criterion is whether the realities of every day experience demonstrate that the party to be made responsible could have prevented the negligent conduct." *Id.* The genuinely disputed facts with respect to Dr. Herrmann's obligations under the LFORM are material to our determination of whether he could have prevented the accident and, therefore, whether we would conclude that he owed a duty to Roberts.

---

[2] We acknowledge that the light pipe was in operation for approximately two years prior to the date of Roberts's accident, which is evidence that it was not "new" for purposes of the LFORM's provision concerning the qualification of "new diagnostics." Joint App'x at 90. However, the LFORM's requirement that all "new" diagnostics be qualified prior to an experiment would not preclude a reasonable factfinder from concluding that Dr. Herrmann had certain responsibilities to list the light pipe as not qualified and ensure its qualification.

4

In contrast, there is no genuine dispute of material fact that precludes the entry of summary judgment in favor of AWE and MIT. The only employees of AWE and MIT who were involved in the experiment in which Roberts was injured were designated as "secondary principal investigators" by Dr. Herrmann. Joint App'x at 309. Dr. Herrmann designated an AWE employee as such to allow AWE to access to the data that was being collected during the experiment. An MIT employee was listed as a principal investigator because Dr. Herrmann wished to use diagnostics designed by MIT and located at the LLE to collect data during the experiment. That MIT employee was not present at the LLE on the date of Roberts's accident. The AWE and MIT employees' connections with the August 6, 2008 experiment were such that a reasonable factfinder could not conclude that the LFORM imposed on them an obligation with respect to the qualification of the light pipe. There are no genuine disputes of material fact that preclude us from deciding that AWE and MIT did not owe Roberts a duty as a matter of law.

In sum, we conclude that the district court erred in granting summary judgment to Los Alamos, but did not err in granting summary judgment to AWE and MIT. Because Los Alamos will remain in this case, summary judgment should not have been granted to the University, which is a third-party defendant and the entity that bears substantial responsibility for the tragic injuries that Roberts suffered. We wish to make clear that we do not hold that Los Alamos owed Roberts a duty of care; rather, we conclude that there are genuine factual disputes that affect the determination of whether Los Alamos owed Roberts a duty and, therefore, Los Alamos is not entitled to summary judgment.

## II. Roberts's Motion for Discovery-Related Sanctions

"A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). In this case, the district court did not abuse its discretion in denying Roberts's motion for discovery-related sanctions against Los Alamos. There is evidence in the record that Roberts's counsel did not work collaboratively with Los Alamos to establish mutually agreeable search terms for e-discovery. In any event, our conclusion that Los Alamos is not entitled to summary judgment means that the documents that it allegedly withheld wrongfully were not necessary to Roberts's ability to defeat Los Alamos's motion for summary judgment.

We have considered the remainder of Roberts's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED IN PART, VACATED IN PART, and this case is REMANDED for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5