| L.B. v Hanson Place Seventh-Day Adventist Church |
|:---:|
| 2025 NY Slip Op 31080(U) |
| April 2, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 520359/2021 |
| Judge: Joanne D. Quiñones |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At I.A.S. Part CVAP3 of the Supreme Court, held in and for the County of Kings at the Courthouse located at 360 Adams Street, Brooklyn, NY 11201, on the **2nd** day of **April, 2025**.

P R E S E N T:

**HON. JOANNE D. QUIÑONES**
Justice of the Supreme Court

------------------------------------------------------------------------x

L.B.,

                                      Plaintiff,

                  - against –

HANSON PLACE SEVENTH-DAY ADVENTIST CHURCH AND NORTHEASTERN CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS,

                                    Defendants.

------------------------------------------------------------------------x

Index No.: 520359/2021

**DECISION & ORDER**
**Motion Sequence No. 2**

Recitation, as required by CPLR 2219 (a) of the papers considered in review of these motions:

| Papers | NYSCEF Document Nos. |
|---|---|
| Notice of Motion, Affidavits (Affirmations), Exhibits Annexed | 37-50 |
| Answering Affidavits (Affirmations) and Exhibits Annexed | 53-64 |
| Reply Affidavits (Affirmations) and Exhibits Annexed | 65 |
| Stipulations & Correspondence | 51-52 |

**Appearances of Counsel:**

*Lester Schwab Katz & Dwyer, LLP*, New York, NY (*Kristina M. Scotto, Esq.*), for defendants.

*Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf*, New York, NY (*Rachel L. Jacobs, Esq.*), for plaintiff.

**OPINION OF THE COURT**

Defendants, Hanson Place Seventh-Day Adventist Church (Hanson Place) and Northeastern Conference Corporation of Seventh-Day Adventists (the Northeastern Conference) (collectively, Defendants), move by notice of motion for an order granting summary judgment to Defendants and dismissing Plaintiff's complaint pursuant to CPLR 3212 (motion sequence no. 2).

[* 1]

On August 11, 2021, Plaintiff commenced this action pursuant to the Child Victims Act (CVA) (*see* CPLR 214-g) by e-filing the summons and complaint with the Kings County Clerk. The complaint alleges that from 1977 to 1980, between the ages of 11 and 13, Plaintiff was sexually abused twice at Hanson Place by L.H., an adult congregant and volunteer (*see* NYSCEF Doc No. 1). Both incidents are alleged to have happened in a closet in the basement at Hanson Place. Plaintiff neither reported the abuse at or around the time of the alleged occurrence nor identified any witnesses to the alleged sexual abuse. Plaintiff argues that Defendants failed to adequately prevent the sexual abuse and seeks damages on the theories of negligent supervision, negligent retention, negligent hiring, and failure to warn (*see id.*).

Defendants now move for summary judgment and dismissal of the complaint. Defendants argue that they cannot be held responsible for the intentional acts of L.H. because Plaintiff failed to establish that Defendants owed a duty of care and further argue that the record fails to contain any evidence that Defendants had actual or constructive notice of L.H.'s propensity for sexual abuse. Plaintiff opposes.

## Analysis

A motion for summary judgment permits the moving party "to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law, thereby avoiding needless litigation cost and delay" (*Brill v City of New York*, 2 NY3d 648, 651 [2004]). The movant bears the heavy burden in the first instance "of establishing its entitlement to judgment as a matter of law by tendering proof, in admissible form, sufficient to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Econobill Corp. v S & S Mach. Corp.*, 62 AD3d 940, 942 [2d Dept 2009]). CPLR 3212(b) specifically requires the motion to be accompanied by the affidavit of a person with knowledge of the facts, a copy of the pleadings, and by other available proof such as depositions and written admissions. If the movant makes the requisite showing, then the burden shifts to the opposing party "to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial" (*Alvarez*, 68 NY2d 320, 324 [1986]). In deciding the motion, the court must view the facts and evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in the non-moving party's favor (*see De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]; *Ruggiero v DePalo*, 153 AD3d 870, 871-872 [2d Dept 2017]; *Gardella v Remizov*, 144 AD3d 977, 979 [2d Dept 2016] *Adams v Bruno*, 124 AD3d 566, 567 [2d Dept 2015]

[* 2]

Moreover, the court's role on a motion for summary judgment is not to resolve issues of fact, but rather to decide whether sufficient questions of fact exist (*see Tunison v D.J. Stapleton, Inc.*, 43 AD3d 910, 910 [2d Dept 2007]).  Therefore, summary judgment is improper "where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Baab v HP, Inc.*, 211 AD3d 783, 783 [2d Dept 2022] [internal quotation marks omitted], quoting *Abdenbi v Walgreen Co.*, 197 AD3d 1140, 1140 [2d Dept 2021]).

**Duty of Care**

To sustain a claim sounding in negligence, Plaintiff must demonstrate a duty of care owed by Defendants to Plaintiff, a breach of that duty, and injury proximately caused by said breach (*see Borghese v Redard*, 226 AD3d 639, 640 [2d Dept 2024]; *Mitchell v Icolari*, 108 AD3d 600, 601 [2d Dept 2013]).

The threshold question before the court, as with any negligence claim, is whether Defendants owed a legally recognized duty of care to Plaintiff (*see Gilson v Metro. Opera*, 5 NY3d 574, 576 [2005]; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]; *Fitzsimons v Brennan*, 169 AD3d 873, 874 [2d Dept 2019]).   The existence of a duty depends on the circumstances of a particular case and is determined "by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Palka v Servicemaster Mgt. Services Corp.*, 83 NY2d 579, 586 [1994]; *see Vogel v W. Mtn. Corp.*, 97 AD2d 46, 48 [3d Dept 1983]).

Defendants argue that no duty of care was owed to Plaintiff in this case because L.H. merely served as a volunteer at Hanson Place but was not employed by Defendants in any capacity. Although it is undisputed that L.H. was a volunteer, this fact alone is not dispositive on the issue of whether Defendants owed a duty of care to Plaintiff.  Instead, the critical factor is whether "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm" (*Hamilton*, 96 NY2d at 233; *see Matter of In re New York City Asbestos Litig.*, 5 NY3d 486, 494 [2005]; *Hores v Sargent*, 230 AD2d 712 [2d Dept 1996]).  Thus, duty may be imposed even when the tortfeasor is acting in a volunteer capacity (*cf. Fils-Aime v Ryder TRS, Inc.*, 40 AD3d 917, 918 [2d Dept 2007] [principal may be liable for agent's negligent acts "even where the agent is acting as a volunteer"], citing Restatement [Second] of Agency § 225; *see also Northacker v County of Ulster*, 212 AD3d 86, 92 [3d Dept 2022] [principal-agent relationship can

Page **3** of **9**

include a volunteer], quoting *Paterno v Strimling*, 107 AD3d 1233, 1235 [3d Dept 2013]; *Rozmus v Wesleyan Church of Hamburg*, 161 AD3d 1538, 1539 [4th Dept 2018]).

Here, Hanson Place is part of the Northeastern Conference Corporation (*see* Scotto Aff ¶ 41). The pastor of Hanson Place is hired and paid by the Northeastern Conference and required to adhere to the guidelines of the Northeastern Conference (Defendants' Exhibit H, Roberts EBT at 36-38, 40-41; Defendants' Exhibit J, Roberts Aff ¶ 2). Pastor John Glenn Roberts, the former pastor of Hanson Place from 1974 to 1980, testified that, in his role as pastor, he "was responsible to the Northeastern Conference for the operation and administration of [Hanson Place]" (Defendant's Exhibit J, Roberts Aff ¶ 2). Sabbath school teachers were supervised by the superintendent along with the Sabbath school council which consisted of the pastor and "a selection of individuals" (Roberts EBT at 67, 70).

According to Pastor Roberts' testimony, L.H. served as a deacon, Sabbath school teacher, and sold some bibles at Hanson Place (Roberts EBT at 68-69, 144, 148-149). In his role as a Sabbath school teacher, L.H. assisted children with preparation for baptism (*id.* at 69).

The testimony of Pastor Roberts sufficiently established that he exercised supervisory powers over volunteers as an employee of the Northeastern Conference and head of Hanson Place. Pastor Roberts stated in unequivocal terms that "any sexual contact or inappropriate relationship with a minor child" by a congregation member "would be an intolerable violation" (Roberts Aff ¶ 3; *see* Roberts EBT at 174-175). Thus, such conduct would result in said member being deemed ineligible "to serve in any role in the church or to volunteer to teach" (Roberts Aff ¶ 3; *see* Roberts EBT at 174-175). Furthermore, in his supervisory role, Roberts testified that even if there was a suspicion of inappropriate contact by a member with a child, he would "have to get rid of them" (Roberts EBT at 176-177). It was also the authority of the pastor to tell any alleged abuser "You're no longer welcome here," and according to Pastor Roberts, he would have so informed any alleged abuser "[o]n the spot" (*id.* at 178).

As established in the proof submitted by Defendants in support of their motion, Defendants had supervisory authority over L.H. and were "in the best position to protect the ... child from the risk of harm" (*Stephanie L. v House of the Good Shepherd*, 186 AD3d 1009, 1013 [4th Dept 2020] [finding foster care program administrator owed duty of care to biological children in placement home]; *see also Krebs v Roslyn Highlands Fire Co.*, 2023 NY Misc LEXIS 29072, *6 [Sup Ct, Nassau County July 14, 2023, Index No. 900027/2021, Steinman, J.] [finding Fire Department owed duty

[* 4]

of care to members of junior firefighters program for sexual abuse committed by volunteer firefighters]).

**Actual and Constructive Notice**

Generally, a defendant is under no obligation to prevent third persons from harming others, even if the defendant can exercise such control (*see D'Amico v Christie*, 71 NY2d 76, 88 [1987]). Nevertheless, certain relationships, such as an employer-employee relationship, may give rise to a duty of care, and employers may also be held liable for torts committed by an employee acting solely for the employee's own personal motives under the theories of negligent hiring, retention, and supervision (*see id.*; *see also MCVAWCD-DOE v Columbus Ave. Elementary School*, 225 AD3d 845, 846 [2d Dept 2024]; *Fernandez v Rustic Inn, Inc.*, 60 AD3d 893, 896 [2d Dept 2009]). Necessary to a cause of action based on negligent hiring, retention, and supervision is proof that the defendant knew or should have known of the individual's propensity for the conduct which caused the injury (*see MCVAWCD-DOE*, 225 AD3d at 846; quoting *Shor v Touch-N-Go Farms, Inc.*, 89 AD3d 830, 831 [2d Dept 2011]; *Nevaeh T. v City of New York*, 132 AD3d 840, 842 [2d Dept 2015]). Similarly, "to sustain a cause of action sounding in negligent failure to warn ... the plaintiff must also establish that the employer was aware of the offending employee's propensity to engage in the complained-of conduct" (*Brophy v Big Bros. Big Sisters of Am., Inc.*, 224 AD3d 866, 868 [2d Dept 2024]). Said differently, the notice element may be satisfied by actual or constructive knowledge of an individual's propensity to engage in the conduct which resulted in injury (*see Moore Charitable Found. v PJT Partners, Inc.*, 40 NY3d 150, 158-159 [2023]; *Belcastro v Roman Catholic Diocese of Brooklyn, N.Y.*, 213 AD3d 800, 801-802 [2d Dept 2023]).

Turning specifically to the cause of action for negligent hiring, this claim imposes liability upon an employer for tortious conduct by an employee " 'when the employer has [ ] hired ... the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm' " (*Sandra M. v St. Luke's Roosevelt Hosp. Ctr.*, 33 AD3d 875, 878 [2d Dept 2006], quoting *Kirkman by Kirkman v Astoria Gen. Hosp.*, 204 AD2d 401, 403 [2d Dept 1994]). Plaintiff asserts that Defendants had a duty to take reasonable precautions to protect minor parishioners from sexual abuse on its property, including, among other things, by instituting policies, procedures, or trainings, and by conducting preliminary investigations prior to hiring L.H. as a volunteer at the church (*see* Plaintiff's Memo ¶ 18-19). This court recognizes that consistent with long-standing common-law principles, an employer does not have a duty "to institute *specific* procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to

[* 5]

investigate the prospective employee" (*Kenneth R. v R.C. Diocese of Brooklyn*, 229 AD2d 159, 163 [2d Dept 1997] [emphasis added]). Notwithstanding, courts have found a "triable issue of fact [where the question is] whether the defendant took the *appropriate* measures to evaluate [an employee's] employment and fitness at the time [of hiring]" (*see D.T. v Sports and Arts in Schs. Found., Inc.*, 193 AD3d 1096, 1097-1098 [2d Dept 2021] [emphasis added]; *Pratt v Ocean Med. Care, P.C.*, 236 AD2d 380, 381 [2d Dept 1997] [summary judgment not proper where questions raised as to the adequacy of employer's screening process]).

Here, it is undisputed that at the time Pastor Roberts served as pastor at Hanson Place, there were no policies or procedures implemented regarding sexual abuse against children (*see* Roberts EBT at 146-148). Pastor Roberts also stated that he had never received any complaints about L.H. (*see id.* at 146). Significantly, however, Pastor Roberts testified that L.H. was assigned to volunteer positions prior to Pastor Roberts' arrival at Hanson Place; therefore, he had no knowledge of any background check or other procedures conducted prior to L.H.'s volunteer leadership roles (*see id.* at 147). Defendants, in support of their motion for summary judgment, failed to provide any facts regarding the circumstances which led to L.H. being placed as a supervisor over children at Hanson Place or the inquiry, if any, conducted at that time. Accordingly, Defendants did not meet their prima facie burden of demonstrating, as a matter of law, that they are entitled to summary judgment on the negligent hiring claim (*see Johansmeyer v New York City Dept. of Educ.*, 165 AD3d 634, 636 [2d Dept 2018] [summary judgment denied where defendant's own papers raised issue of fact as to appropriate measures implemented to evaluate intern's employment and fitness at the time intern was hired]; *Giangrasso v Assn. for Help of Retarded Children*, 243 AD2d 680, 680 [2d Dept 1997] [defendant not entitled to summary judgment where questions of fact exist as to the adequacy of the screening process of new employees and whether defendant took appropriate measures to evaluate employee's fitness at the time of hiring]).

With respect to the remaining causes of action, Plaintiff concededly did not provide Defendants with notice of the abuse. Plaintiff's verified bill of particulars clearly states that Plaintiff did not report the sexual abuse alleged in the complaint to any defendant, law enforcement agency, or officer (*see* Defendants' Exhibit C; *see also* Exhibit D, Standard Automatic Disclosures [not in possession of names of eyewitnesses and notice witnesses]). Plaintiff's deposition testimony was consistent with this assertion (*see* Defendants' Exhibit F, Plaintiff's EBT). At the deposition, Plaintiff testified that for each of the two incidents of alleged abuse, no witnesses were present, and no reports were made to Defendants (*see id.* at 42-43, 45-46, 50, 53, 58, 61-63). To the extent that Plaintiff

[* 6]

informed a childhood best friend of the abuse, Plaintiff could not recall when this conversation occurred and there was no testimony or proof that the information was then transmitted to Defendants or law enforcement (*see id.* at 53-55). Further, Pastor Roberts' affidavit and deposition testimony indicate that he was not aware or advised of any inappropriate contact with children during his time as pastor. Based on these facts, Defendants' met their prima facie burden of showing the absence of the legally required notice.

Plaintiff, in opposition, contends that there was both actual and constructive notice. In assessing Plaintiff's proof in opposition, the court is careful to consider only facts alleged to have occurred prior to and during the abuse alleged in this case (1977-1980) since it is axiomatic that Defendants cannot be on notice of L.H.'s propensity to engage in a wrongful act based upon subsequent events (*see Pisula v R.C. Archdiocese of N.Y.*, 201 AD3d 88, 103 [2d Dept 2021] ["Negligence can only be determined 'by what was known before and at the time of the accident,' and cannot be inferred from subsequent acts"]).

Plaintiff first cites the deposition of G.M., to establish actual notice (*see* Plaintiff's Exhibit B, G.M. EBT). G.M. also attended Hanson Place and sometime in or around 1978 to 1981, L.H. held G.M. back after class for "extra lessons" (G.M. EBT at 63-64). According to G.M., these "extra lessons" after class consisted of G.M. "sitting on [L.H.'s] lap and him bouncing [G.M.] on his lap" which resulted in L.H. "having an orgasm" (*id.* at 59). This occurred approximately 15 times (*id.* at 60, 65). G.M. also testified that on approximately 12 other occasions, L.H. "would have [G.M.] masturbate him" in the classroom by "tak[ing] his penis out his pants and [having her] squeeze his penis hard" (*id.* at 64-66). On one occasion when G.M. was "sitting on [L.H.'s lap] helping him think" she recalled one of the deacons or ushers, who was also a choir member, walking into the classroom and L.H. "pushed [G.M.] very quickly off his lap and told [G.M.] to go to service" (*id.* at 71).

In 1980, at the age of 13,[1] G.M. told her friend, K.Y., the daughter of Pastor Rupert Young, of the incidents with L.H. (*see* G.M. EBT at 76, 78, 80). After informing K.Y., Pastor Young had a conversation with G.M. the following week at which time he asked if what K.Y. told him was true, to which G.M. responded., "Yes" (*id.* at 80-83). Then, Pastor Young told G.M. that she was "not to repeat this to anyone else" because "[G.M.] did not need to bring anymore shame on [her] family. And that [G.M.] was to not tell anyone what [she] told [K.Y.]" (*id.* at 81-82).

---

[1] G.M. testified that she was born in 1967 (*see* G.M. EBT at 12) and told K.Y. of the abuse at the age of 13 (*see id.* at 78).

[* 7]

Affording Plaintiff the benefit of every favorable inference, G.M.'s deposition testimony was sufficient to create a triable issue of fact as to whether Defendants had actual notice of the abuse. The complaint alleges that L.B. was abused from 1977-1980. Pastor Roberts, who served as pastor of Hanson Place until 1980, testified that he did not believe Hanson Place went without a pastor and Pastor Young immediately succeeded him (*see* Roberts EBT at 84-85). G.M.'s testimony that at the age of 13 she had a conversation directly with Pastor Young regarding the abuse by L.H. indicates that Defendants received actual notice in or around 1980 of abuse by L.H. Plaintiff is entitled to a favorable inference that this conversation occurred at or around the same time, albeit the latter part, that Plaintiff was abused by L.H. Additionally, the alleged deacon-witness to G.M.'s classroom abuse also created an issue of fact as to actual notice considering that deacons were in a position of authority at Hanson Place (*see* Roberts EBT at 50-53 [deacons considered a position of leadership and authority at Hanson Place]).

As it relates to constructive notice, Plaintiff argues that the "*thirty* instances of [L.H.] either being alone in a church classroom or leaving church property with [G.M.], and the fact that it took [G.M.] approximately three years to be baptized, in the light most favorable to [Plaintiff] as the non-moving party and granting her every favorable inference, these episodes are clear examples of Hanson Place having constructive notice of [L.H.]'s propensity to sexually abuse young girls" (Plaintiff's Memo ¶ 12). Considering the totality of G.M.'s deposition testimony, the abuse alleged by G.M. at Hanson Place was sufficient to raise a triable issue of fact as to Defendants' constructive notice of L.H.'s propensity to sexually abuse.

G.M. testified that from 1978 to 1981, L.H. sexually abused her approximately 15 times in a classroom on the first floor of Hanson Place (*see* G.M. EBT at 54, 58-59, 60, 63-65). The classroom abuse, as stated by G.M., occurred between 10:00 a.m. and 11:00 a.m., after Sabbath school and before church service (*see id.* at 54-55). G.M. also testified that her baptismal preparedness with L.H. lasted for three years, from age 11 to 13 (*see id.* at 53, 166). Pastor Roberts testified that a three-year period to become baptized is "very unusual" and, as pastor, he "would want to find out why is [the child] taking so long to be prepared" (Pastor Roberts EBT at 111-112).

"[G]iven the frequency of the alleged abuse, which … occurred inside the same classroom … [D]efendants did not eliminate triable issues of fact as to whether they should have known of the abuse" (*Sayegh v City of Yonkers*, 228 AD3d 690, 692 [2d Dept 2024] [internal quotation marks omitted], quoting *MCVAWCD-DOE v Columbus Ave. Elementary Sch.*, 225 AD3d 845, 847 [2d Dept 2024]). Moreover, the length of time in which G.M. was subjected to L.H.'s baptismal preparedness

Page **8** of **9**

class, which occurred around the same time as the alleged abuse of Plaintiff, further raises an issue of fact as to constructive notice (*see Hammill v Salesians of Don Bosco*, 228 AD3d 738, 739-740 [2d Dept 2024] [given the frequency and nature of alleged abuse, triable issue of fact as to whether the defendant had constructive notice of employee's alleged propensity for sexual abuse]).

## CONCLUSION

In accordance with the foregoing, it is hereby:

**ORDERED** that Defendants' motion for summary judgment (motion sequence no. 2) is **denied**; and it is further

**ORDERED** that Plaintiff shall serve a copy of this decision and order, with notice of entry, upon Defendants within five (5) days of entry. Plaintiff shall e-file an affidavit of said service within seven (7) days of effectuating service.

Any issue raised and not decided herein is denied.

This constitutes the decision and order of the court.

Dated: April **2, 2025**

**E N T E R:**

_____
HON. JOANNE D. QUIÑONES
Justice of the Supreme Court